## William ZIEGLER III, et al.

### v.

## AMERICAN MAIZE–PRODUCTS COMPANY et al.

Supreme Judicial Court of Maine.

Argued April 6, 1995.

Order issued April 10, 1995.

Opinion issued May 11, 1995.

---

Ralph I. Lancaster, John J. O'Leary, (orally), James B. Zimpritch, Catherine R. Connors, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for William Ziegler, III.

Peter J. DeTroy, Norman, Hanson & Detroy, Portland, Charles N. Brower, Anne Smith, Robert Morrow, White & Case, New York City, for First Fidelity Bank.

Jeffrey A. Thaler (orally), Berman & Simmons, Lewiston, for Steiner, et al.

James G. Goggin, Roy S. McCandless, Verrill & Dana, Portland, Robert S. Frank (orally), Harvey & Frank, Portland, Robert C. Myers, Jack Kaufmann, Michael C. Hefter, Dewey & Ballantine, New York City, for American Maize–Products.

Peter J. Rubin, (orally), David A. Soley, Bernstein, Shur, Sawyer & Nelson, Portland, for Steinkraus, et al.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

WATHEN, Chief Justice.

Plaintiffs William Ziegler III and Fidelity Bank (Fidelity) appeal from the Superior Court's denial of their application for injunctive relief to bar the issuance of additional shares of Class B voting stock by Defendant American Maize–Products Company (American Maize) (Cumberland County, *Brennan, J.*). Plaintiffs premise their argument on the fact that 13–A M.R.S.A. § 902(3)[1] specifically requires that merger plans be approved by "the affirmative vote of the holders of at least a majority of the outstanding shares of each class of shares entitled to vote as a class thereon." Plaintiffs assert that section 902(3) prohibits the American Maize Board of Directors (Directors) from issuing additional shares of Class B stock, pursuant to 13–A M.R.S.A. § 507(1),[2] in order to effect a merger without the approval of a majority of the current shareholders. We conclude that the Superior Court erred in rejecting plaintiffs' argument. We vacate the judgment and enjoin the stock issuance.

The relevant facts may be briefly summarized as follows: Plaintiff Ziegler is Chairman of the Board of Directors of American Maize, a Maine corporation with principal divisions in corn and tobacco products. Plaintiff Fidelity is co-trustee with Ziegler of two trusts whose assets include a significant portion of American Maize Class B stock. Plaintiffs seek to enjoin the Directors of American Maize from issuing additional shares of American Maize Class B stock to Eridania Beghin–Say (EBS), a French corporation, pursuant to a stock purchase agreement, that will allow EBS to accumulate, over their opposition, enough votes to approve a merger of American Maize and EBS.

American Maize has two classes of stock whose affirmative vote is required for approval of the merger plan: Class A and Class B. GIH Corporation (GIH) is a Delaware corporation whose principal asset is stock in American Maize. GIH holds 47.3% of the presently outstanding shares of Class B stock. As a result of an agreement reached by the GIH stockholders, Ziegler is in a position to prevent GIH from affirmatively voting its shares of American Maize.[3] In addition to having blocking control of GIH's Class B stock, Ziegler individually and beneficially owns 7.2% of Class B shares and thus effectively controls a 54.5% majority of American Maize Class B stock.

On February 22, 1995, the American Maize Directors approved a Merger Agreement with EBS. As a result of plaintiffs' opposition, the Directors agreed to issue authorized, but previously unissued, Class B shares of American Maize with a pre-emptive rights offer to existing Class B shareholders to be exercised by 5:00 p.m. on Monday, April 10, 1995. The agreement between the shareholders of GIH requiring an affirmative vote of three directors effectively prevents GIH from exercising its pre-emptive rights, and thus EBS would be in a position to purchase the shares and accumulate enough votes to approve the merger. The merger agreement and related stock purchase agree-

1. 13–A M.R.S.A. § 902(3) provides in pertinent part:
   ... the plan of merger or consolidation shall be approved upon receiving the affirmative vote of the holders of at least a majority of the outstanding shares of each class of shares entitled to vote as a class thereon....

2. 13–A M.R.S.A. 507(1) provides in pertinent part:
   Except to the extent that the articles of incorporation or the bylaws otherwise provide, the directors of a corporation shall have authority to issue from time to time any part or all of the authorized but unissued shares or dispose of the treasury shares of the corporation, and determine the time when, the terms and conditions upon which, and the consideration for which, the corporation shall issue or dispose of such shares.

3. Although the New York Ziegler Trust, of which Ziegler and Fidelity are co-trustees, appears to control one more share of GIH stock than the New York Steinkraus Trust, a stockholders agreement requires the affirmative vote of three directors to authorize a vote by GIH. The four directors of GIH are Ziegler, his son William Ziegler, Helen Steinkraus, and her son Eric Steinkraus. Although the Steinkrauses favor the merger and have intervened in this action as a defendant, Zieglers' opposition deadlocks the GIH board and insures that GIH will not vote affirmatively on the merger.

ment permit EBS thereafter to acquire American Maize through a tender offer and "cash-out" merger of $40 per share.

Plaintiffs sought preliminary injunctive relief in the Superior Court. The court denied their motion, observing that Maine law is unsettled regarding the authority of a board of directors to issue additional shares of stock for the purpose of permitting a merger without the approval of the current holders of voting stock. Consequently, the court held that plaintiffs had not carried their burden of demonstrating a likelihood of success on the merits.

■ On appeal, defendants contend as an initial matter that plaintiffs have failed to demonstrate that they control American Maize and consequently they lack standing to petition this Court for the protection of their rights as controlling shareholders. Defendants concede that, but for the issuance of the additional shares, plaintiffs Ziegler and Fidelity would have the power to prevent approval of the proposed merger. Both Ziegler and Fidelity oppose the merger. The board of GIH is therefore deadlocked, and will not vote its Class B shares on the merger. Section 902(3) requires an affirmative vote by a majority of the stockholders and failure to vote equals a negative vote. The combined effect of Ziegler's "no" votes and GIH's failure to vote would result in the defeat of the merger. Under these circumstances, blocking power equals control, and plaintiffs Ziegler and Fidelity have standing to bring this action.[4] *See Allegheny Corp. v. Breswick,* 353 U.S. 151, 160, 77 S.Ct. 763, 769, 1 L.Ed.2d 726 (1957) (loss of corporate control engendered by a dilutive stock issuance is a particular injury that compels a direct action).

Turning to the merits, we must determine whether an issuance of stock made solely for the purpose of avoiding an unfavorable vote on a proposed merger is proscribed by section 902(3).

■ In construing statutes, we have stated that specific statutory provisions take prece-

dence over general provisions. *In Re Valuation of Common Stock of McLoon Oil Co.,* 565 A.2d 997, 1008 (Me.1989). Defendants in this case rely on 13–A M.R.S.A. § 507(1) to support the legality of the issuance of new voting shares of American Maize stock to facilitate the EBS merger. Section 507(1) is part of the "Corporate Finance" chapter of the Maine Business Corporation Act (MBCA) which deals with the attributes of authorized shares, subscriptions for shares, the issuance of shares, when shares are fully paid and nonassessable, dividends on shares, and similar matters of corporate finance. 13–A M.R.S.A. §§ 501–525. Chapter 9, "Mergers and Consolidations" contains section 902(3) and establishes a comprehensive set of rules governing the circumstances in which corporations can merge, the procedural requirements for mergers, the effects of mergers, dissenters' rights in mergers, and related matters. 13–A M.R.S.A. §§ 901–910.

■ Section 902(3) specifically addresses the merger at issue in the present case, whereas section 507(1) deals generally with stock issues, without regard to whether the stock issue is an integral part of a merger. When there is in the same statute a specific provision and also a general one, which in its most comprehensive sense would include matters embraced in the specific provision, the general provision must be understood to affect only those cases within its general language that are not within the provisions of the specific provision. The result is that the specific provision controls. *See* 73 Am. Jur.2d, *Statutes,* § 257 (1974); *see also McLoon Oil Co.,* 565 A.2d at 1008; *Beaulieu v. City of Lewiston,* 440 A.2d 334, 345 (Me. 1982).

■ Our decision is also influenced by the principle that a statute in derogation of the common law must be strictly construed. *Miller v. Szelenyi,* 546 A.2d 1013, 1020 (Me. 1988). At common law, no merger could take place without the unanimous consent of the stockholders. *See McLoon Oil,* 565 A.2d 997. That strict rule long ago abated, and Maine corporations are now permitted to enter into

---

4. Defendants also argue that Ziegler has no authority to bring this action on behalf of GIH. We need not address this issue because we find that

Ziegler and Fidelity have the controlling votes and consequently have standing to bring this action in their own right.

mergers with the affirmative vote of a majority of the shareholders entitled to vote thereon. 13–A M.R.S.A. § 902(3). Nevertheless, the legislative pronouncement embodied in section 902(3) alters common law only to the extent that the Legislature has made that purpose clear. *See Emery Waterhouse Co. v. Lea,* 467 A.2d 986, 996 (Me.1983).

■ In determining the scope and effect of the two sections at issue, we read them together as a single piece of legislation to reach the harmonious result presumably intended by the Legislature. *Bolduc v. Androscoggin County Commissioners,* 485 A.2d 655, 658 (Me.1984). If the section pertaining to the issuance of stock is construed to authorize issuance in circumstances such as these, directors could overcome the requirement for a bona fide shareholder vote under section 902(3) by the simple expedient of issuing shares to a party certain to vote for the merger. The plan of merger in the present case, rather than calling for the vote of the existing shareholders, included as a first step the issuance of shares for the purpose of creating a favorable majority. As a practical matter, this would allow the directors to stuff the corporate ballot box. We conclude that the Legislature did not intend to provide, in the same act, a requirement for shareholder approval of a plan of merger, and a ready method of evading such a requirement. *See Rath v. Rath Packing Co.,* 257 Iowa 1277, 136 N.W.2d 410, 417 (1965).

We have held that a merger that fails to comply with the specific requirements of the governing merger statute is illegal and invalid. *Marcou v. Federal Trust Co.,* 268 A.2d 629, 634–35 (Me.1970). In *Marcou* we enjoined a merger where a bank holding company attempted to circumvent the statutory requirements of the Maine Bank Merger statute. We held that the series of steps in the proposed merger, although individually complying with the statutory requirements "for no more than a twinkling of an eye," in fact violated the statute because they actually formed one transaction whose purpose was to compel the stockholder to give up a right

that was specifically provided for in the merger statute.[5] *Id.* at 635.

We confront a similar situation in the present case. It is undisputed that the proposed issuance of additional shares of stock, although generally authorized by section 507(1), is designed and intended to permit the merger without the approval of a majority of holders of the stock as required by section 902(3). Under these circumstances, the issuance of the additional shares of stock is precluded by the specific provisions of section 902(3).

The entry is:

Judgment vacated. Remanded for the entry of judgment permanently enjoining appellees, their officers, agents, servants, employees and attorneys and all persons in active concert or in participation from issuing stock pursuant to the stock purchase agreement approved by the Board of Directors of American Maize–Products Company on February 22, 1995, and from enforcing the deadline of 5:00 p.m. on Monday, April 10, 1995 for Class B shareholders of American Maize–Products Company to exercise their pre-emptive rights to acquire any additional Class B voting shares issued by American Maize–Products Company.

All concurring.

---

**5.** In *Marcou,* the applicable statute required that the merger plan provide a method of converting the shares of the merging bank into shares of the

resulting trust company. We enjoined a merger plan that forced the shareholders to give up that statutory right. *Marcou,* 268 A.2d at 634.