DOCKET NO: RE-20-103

MARTINA SULLIVAN, )
)
    **Plaintiff,** )
)
    **v.** )                **ORDER**
)
**OWN HASKELL, INC. LAND** )
**SURVEYING COMPANY, et al.,** )
)
    **Defendants**

Before the court are the following motions: Defendants' separate Motions to Dismiss; Plaintiff's Motion for Entry of Default against Defendant Samuel Kilbourn; Defendant Kilbourn's Motion to Enlarge Time to File Answer; Plaintiff's Motion to Join Additional Parties; and Defendant Warren-White's Motion for *Spickler* Order. After careful consideration, the court finds that Ms. Sullivan's complaint is barred by the doctrine of res judicata and must be dismissed with prejudice. Defendant Kilbourn's Motion to Enlarge Time is granted and Defendant Warren-White's Motion for *Spickler* Order is denied.

## I. Factual Background

The following facts are taken from the Plaintiff, Martina Sullivan's, Complaint and are viewed in the light most favorable to her. Defendant, Owen Haskell Inc., completed a land survey on behalf of co-Defendants Nathaniel and Elisabeth Warren-White in 2014. The survey sparked a protracted boundary dispute between Ms. Sullivan and the Warren-White's regarding the location of their shared property line. In 2015, the Warren-Whites approached Ms. Sullivan with an offer to purchase a portion of her property. Ms. Sullivan declined the offer and the Warren-White's instituted a lawsuit in Cumberland County Superior Court ("first lawsuit") alleging that the Warren-Whites had obtained

title to the disputed property through adverse possession. Judgment was entered in favor of the Warren-Whites in 2017; and, Owen Haskell completed a new survey to reflect the court's ruling. The survey was submitted to the court and final judgment was entered. Ms. Sullivan sought relief from judgment pursuant to M.R. Civ. P. 60(b), which was denied. Ms. Sullivan appealed the 2017 judgment. The Law Court upheld the Superior Court's judgment in the "first lawsuit."

Ms. Sullivan brought a separate suit in Superior Court against the Warren-Whites in 2018 ("second lawsuit"). The "second lawsuit" alleged that the Warren-White's boundary line had been mismarked in the 2017 Owen Haskell survey. The Superior Court entered summary judgment in the "second lawsuit" in favor of the Warren-Whites, stating that "the boundary line set on the face of the earth by the Owen Haskell land surveying firm on or about October 5, 2017 is consistent with the boundary established by the judgment entered" in the "first lawsuit." *Sullivan v. Warren-White*, 2019 Me. Super. LEXIS 120, *12 (Aug. 22, 2019). The court held further that Ms. Sullivan was "now collaterally estopped" from disputing the Warren-Whites' claim of adverse possession. *Id.* at *5. Ms. Sullivan's appeal from the summary judgment entered in the "second lawsuit" is currently pending before the Law Court.

Ms. Sullivan now brings this "third lawsuit" against a number of Defendants, alleging that the Defendants collectively schemed to obtain Ms. Sullivan's property through fraud. The crux of Ms. Sullivan's argument concerns what the parties have referred to as an "old abandoned road." Ms. Sullivan claims that the location of the abandoned road was intentionally misrepresented on the 2017 Owen Haskell survey, as well as various land surveys and property descriptions submitted to the court in the "second lawsuit." Ms. Sullivan stated at hearing that the surveys and descriptions she

challenges in this "third lawsuit," are the same surveys and descriptions that were submitted to the court on summary judgment in the "second lawsuit."

Ms. Sullivan's argument regarding the "old abandoned road" is premised on the Paper Street's Act. The Paper Streets Act vests ownership of abandoned roads to abutting property owners, with each abutting property owner obtaining half of the abandoned road to the center line. *See generally* 23 M.R.S. § 3027 et seq. Ms. Sullivan argues that the location of the "old abandoned road" was intentionally mismarked on the 2017 Owen Haskell survey and that Ms. Sullivan actually owns one half of the road via the Paper Streets Act. It was acknowledged at hearing on this Motion that the Paper Streets Act and the "old abandoned road" were at issue in the original adverse possession lawsuit ("first lawsuit"), and that the Warren-White's obtained title to the entire "old abandoned road" by virtue of adverse possession, not the Paper Street's Act.

Ms. Sullivan hired Defendant Sebago Technics to conduct a new land survey sometime after the adverse possession, "first lawsuit." Ms. Sullivan stated that she hired Sebago to determine the accurate location of the "old abandoned road." Sebago Technics agreed with the 2017 Owen Haskell survey and its depiction of the disputed property line. Ms. Sullivan claims that Sebago Technics was negligent in their reliance on the allegedly inaccurate surveys and property descriptions.

Ms. Sullivan has also named attorney Samuel Kilbourn in this "third lawsuit." Ms. Sullivan alleges that Mr. Kilbourn authored a mete and bounds description that was submitted to the court in the "second lawsuit." The description purports to describe the Warren-White's property in light of the Warren-White's successful adverse possession claim. The description does not reference the location of the "old abandoned road."

Ms. Sullivan's "third lawsuit" Complaint, alleges six counts: (1) fraud; (2) statutory fraud pursuant to 32 M.R.S. § 11206; (3) material misrepresentation; (4) negligent

misrepresentation; (5) negligence; and (6) punitive damages. Although Ms. Sullivan does not specifically segregate her claims against any particular defendants, the theory underlying each cause of action is that the "old abandoned road" was mismarked on the 2017 Owen Haskell survey and other evidence submitted to the Superior Court on summary judgment in the "second lawsuit." The Defendants have all filed separate Motions to Dismiss, arguing that this "third lawsuit" is barred by res judicata.

## II. Legal Standard

### A. Motion to Dismiss

A motion to dismiss pursuant to M. R. Civ. P. 12(b)(6) "tests the legal sufficiency of the allegations in the complaint, not the sufficiency of the evidence the plaintiffs are able to present." *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993)(internal citations omitted). The court shall "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.*

### B. Res Judicata

"The doctrine of res judicata is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once.'" *Camps Newfound/Owatonna Corp. v. Town of Harrison*, 1998 ME 20, ¶ 11, 705 A.2d 1109 (citations and quotations omitted). Res judicata "has two components: collateral estoppel, also known as issue preclusion, and claim preclusion." *Kurtz & Perry, P.A. v. Emerson*, 2010 ME 107, ¶ 16, 8 A.3d 677. Collateral estoppel "prevents the relitigation of factual issues already decided

Page 4 of 12

if the identical issue was determined by a prior final judgment, and . . . the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding." *Penkul v. Matarazzo*, 2009 ME 113, ¶ 7, 983 A.2d 375 (quotations omitted). "Claim preclusion bars the relitigation of claims if: (1) the same parties or privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *Guardianship of Jewel M.*, 2010 ME 80, ¶ 40, 2 A.3d 301.

## III. Discussion

### A. Res Judicata

Ms. Sullivan's claims of fraud and fraudulent misrepresentation (Counts I, II, and III) are barred by the collateral estoppel component of res judicata. The basis of Ms. Sullivan's fraud argument is that the Defendants colluded to submit mismarked surveys and inaccurate property descriptions to the court in the "second lawsuit" in order to prove that the allegedly mismarked 2017 Owen Haskell survey is accurate. Accordingly, the evidence underlying Ms. Sullivan's fraud claim in this "third lawsuit", is the same evidence that has previously been submitted and ruled upon by this court on summary judgment. Moreover, it has been shown that the location of the "old abandoned road" was not material to the location of the Warren-White's new boundary line because the Warren-Whites acquired title to the entire "old abandoned road" by virtue of adverse possession.

At hearing on the Defendants' Motions to Dismiss, it was established that the "old abandoned road" has been at issue since the Warren-White's adverse possession "first lawsuit." Indeed, the original judgment addressed the legal implications of the "old abandoned road," providing that: "each party owns [property] to the centerline of the abandoned road" under traditional Maine law. *Warren-White v. Sullivan*, 2017 Me. Super.

LEXIS 168, *1 (Aug. 17, 2017). However, the court also observed that the Warren-Whites can nonetheless acquire title to the *entire* abandoned road if they "can establish title . . . to some part or the entire southerly portion of that land through adverse possession." *Id.* Based upon the evidence presented in the "first lawsuit," the court found that Ms. Sullivan "did not use or maintain any of the property within the Abandoned Road" and concluded that the Warren-Whites "[had] acquired title up to the southerly side of the abandoned road" by adverse possession. *Id.* at *4, 11. The 2017 Owen Haskell survey was accepted and found to be an accurate description of the adverse possession judgment in the "first lawsuit."

Based on the forgoing, Ms. Sullivan cannot maintain her fraud allegations in the "third lawsuit." The factual issue presented here, whether the 2017 Owen Haskell survey was accurate, was decided by final judgment in the "second lawsuit." The surveys and descriptions challenged in the "third lawsuit" are the same surveys and descriptions the court relied to reach final judgment in the "second lawsuit." Although Ms. Sullivan now alleges that these surveys and descriptions were *fraudulently* inaccurate, Ms. Sullivan is nonetheless arguing again that the 2017 Owen Haskell survey, and documents submitted in support, are inaccurate. There has been a final judgment on the accuracy of the surveys and descriptions at issue in this case and res judicata prevents the prelitigation of the very same factual issue.

In issuing this decision, the court recognizes that Ms. Sullivan is not a legal professional and is unfamiliar with legally technical terms such as res judicata. However, Ms. Sullivan's pending appeal of the "second lawsuit" illustrates the purpose of res judicata, and demonstrates why her allegations of fraud must be dismissed pursuant to res judicata here.

"Res judicata" is a Latin phrase that means a thing or matter, such as a dispute over the accuracy of a land survey, has previously been decided. *See* Blacks Law Dictionary, 1470 (4th ed. 1968). Legally, res judicata means that if a judge has settled a factual issue by final judgment, such as on a motion for summary judgment, then the court's final judgment on that matter is conclusive, final, and binding in future lawsuits. *See id; see also Camps Newfound/Owatonna Corp*, 1998 ME 20, ¶ 12, 705 A.2d 1109.

With this in mind, consider what would happen if the Law Court were to overturn summary judgment in the "second lawsuit" before this "third lawsuit" is decided. If this were to occur, there would be two separate Superior Court lawsuits challenging the accuracy of the same 2017 Owen Haskell survey. The evidence submitted for both pending lawsuits would be identical, and would force two separate Justices to decide the same factual issue: does the 2017 Owen Haskell survey and supporting documents represent the current boundary line between Ms. Sullivan and the Warren-Whites. The possibility of two identical lawsuits over the same set of facts would be improper. A new lawsuit – "third lawsuit" -- challenging an identical issue of fact previously decided is likewise improper and barred by the doctrine of res judicata.

This conclusion is also unchanged by Ms. Sullivan's new allegations of fraud. To prove fraud, Ms. Sullivan would still need to prove that the surveys and property descriptions at issue are indeed inaccurate. The accuracy of the 2017 Owen Haskell survey, and supporting documents, has been decided by final judgment of this court in the "second lawsuit." Dismissal of Ms. Sullivan's lawsuit ("third lawsuit") is warranted under these circumstances.

Accordingly, Ms. Sullivan's fraud claims are barred by the doctrine of res judicata and Counts I, II, and III and are dismissed with prejudice. Ms. Sullivan should note that dismissal with prejudice operates as a judgment on the merits of Ms. Sullivan's claims.

*See Green Tree Servicing, LLC v. Cope*, 2017 ME 68, ¶ 13, 158 A.3d 931. This means that Ms. Sullivan is prohibited from filing these claims against the Defendants in future lawsuits.

## 1. Heightened Pleading Standards

This ruling is also supported by the heightened pleading standards required in cases alleging fraud. "In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." M.R. Civ. P. 9(b). Indeed, "[o]n certain subjects understood to raise a high risk of abuse of litigation, a plaintiff must state factual allegations with greater particularity[.]" *Bean v. Cummings*, 2008 ME 18, ¶ 11, 939 A.2d 676; *quoting Bell Atlantic Corp. v. Towmbly*, 550 U.S. 544, 569 n.14 (2007). The Law Court has noted that in lawsuits alleging the similar claim of perjury: "[h]eightened pleading requirements are necessary to ensure that disgruntled litigants are not able to use civil perjury claims as a means to re-litigate cases when they are displeased with the outcomes." *Bean*, 2008 ME 18, ¶ 13,

Here, Ms. Sullivan cannot use allegations of fraud as a means to re-litigate issues that have previously been decided. Instead, Ms. Sullivan's "third lawsuit" Complaint must allege specific acts or circumstances of fraud with greater particularity. However, the only allegation of fraud here is Ms. Sullivan's general assertion that the Defendants colluded to commit fraud by misrepresenting the location of the "old abandoned road" on various surveys and property descriptions. Indeed, Ms. Sullivan indicated at hearing that she wishes to depose certain individuals to determine how or why the "old abandoned road" has been mismarked. Under the circumstances, Ms. Sullivan's Complaint falls short of the particularized pleading requirements for fraud allegations. Accordingly, Ms. Sullivan's claims regarding fraud and fraudulent misrepresentation are also subject to dismissal for failure to plead facts with particularity pursuant to M.R. Civ. P. 9(b).

## B. Negligence

Ms. Sullivan's first claim of negligence appears to concern Defendant Sebago Technics only. Ms. Sullivan alleges that Sebago was negligent when it found that the 2017 Owen Haskell survey was accurate (Count IV). Ms. Sullivan also alleges that Sebago was negligent because it failed to submit this negligence claim to mediation prior to her filing this lawsuit. Negligence requires the plaintiff to prove: (1) a duty of care owed to the plaintiff; (2) a breach of that duty by the defendant; (3) an injury suffered by the plaintiff; and (4) that the breach of duty caused the plaintiff's injury. *Bell ex re. Bell v. Dawson*, 2013 ME 108, ¶ 17, 82 A.3d 827.

Here, Ms. Sullivan's negligence claim is based on her assertion that the 2017 Owen Haskell survey was inaccurate. The accuracy of the 2017 survey has previously been decided by final judgment in the "second lawsuit." For the reasons stated above, Ms. Sullivan cannot relitigate the accuracy of the 2017 survey in this "third lawsuit." Because Ms. Sullivan cannot maintain her negligence claim against Sebago, the court declines to address Ms. Sullivan's allegations regarding Sebago's refusal to mediate. Accordingly, Count IV of Ms. Sullivan's Complaint is dismissed with prejudice.

## C. Defendant Samuel Kilbourn

The next issue for this court to consider is the Complaint as it relates to Defendant Attorney Samuel Kilbourn. Ms. Sullivan alleges that Mr. Kilbourn authored a mete and bounds description of the disputed property, which the court adopted. Ms. Sullivan further alleges that Mr. Kilbourn guessed at the location of the "old abandoned road" and did not rely on evidence. Ms. Sullivan does not allege which land survey Mr. Kilbourn was involved in, nor the circumstances under which a duty of care might have arisen with Ms. Sullivan.

Mr. Kilbourn failed to respond timely to Ms. Sullivan's Complaint and Ms. Sullivan moved for this court to enter default. Mr. Kilbourn filed a Motion to Enlarge Time to File Answer three days after Ms. Sullivan requested entry of default. Mr. Kilbourn has also moved to join in the co-Defendant's collective opposition to the Complaint.

The court is unwilling to enter default against Mr. Kilbourn under the circumstances and grants Mr. Kilbourn's Motion for Enlargement. Maine has a preference of deciding cases on the merits and parties "should not be precluded by technicalities of pleading from presenting [a] claim or defense on its merits[.]" *Bangor Motor Co. v. Chapman*, 452 A.2d 389, 392 (1982). Ms. Sullivan's negligence claim against Mr. Kilbourn is based on the same theory of fraud outlined above. Ms. Sullivan cannot maintain her deficient Complaint against Mr. Kilbourn based upon a mere technicality. Mr. Kilbourn's Motion for Enlargement is granted and Count V of Ms. Sullivan's Complaint is dismissed with prejudice.

### D. Punitive Damages

Ms. Sullivan's "third lawsuit" Complaint also alleges punitive damages (Count IV). Punitive damages may only be recovered in instances where a plaintiff proves some tortious conduct has occurred. *See Jolovitz v. Alfa Romeo Distribts. Of N. Am.*, 2000 ME 174, ¶ 11, 760 A.2d 625. Here, Ms. Sullivan's Complaint fails to allege facts sufficient to show that she may be able to recover for any tortuous conduct alleged. Accordingly, Ms. Sullivan cannot recover punitive damages. Count VI of Ms. Sullivan's Complaint is dismissed with prejudice.

### E. Motion to Add Additional Parties

Finally, Ms. Sullivan has moved to add her neighbors, Stephen and Cinda Joyce, to the Complaint, citing "their role in the misrepresentation or the fraud claims alleged

in the Complaint." (Def. Mot. Req. to Add Def. pg. 1.) However, ". . . futility of amendment [is] grounds for denying a motion to amend." *Paul v. Town of Liberty*, 2016 ME 173, ¶ 9, 151 A.3d 924. Here, Ms. Sullivan's claims of fraud and fraudulent misrepresentation against the Joyces are the same allegations that she is collaterally estopped from bringing against the other Defendants. Res judicata also precludes this lawsuit against the Joyces and thus her addition of the Joyces would be futile. Ms. Sullivan's motion to add the Joyces as parties is denied.

### F. *Spickler* Order and Attorney's Fees

The Warren-Whites have asked this court to enter a *Spickler* Order, which would establish "a screening mechanism whereby any future complaints" by Ms. Sullivan would have to first be submitted and examined by the court to determine whether the complaint establishes a meritorious cause of action. *Spickler v. Key Bank of S. Me.*, 618 A.2d 204, 207 (Me. 1992). The Defendants have all asked this court to also award attorney's fees.

The court declines to enter a *Spickler* Order or award attorney's fees under the circumstances. At hearing, Ms. Sullivan presented a genuine belief in her allegations. Ms. Sullivan articulated her position as well as any person without technical legal training could have, particularly in the face of the esoteric res judicata doctrine. Despite this genuine belief however, the facts asserted by Ms. Sullivan have still been decided by final order in the "second lawsuit." Ms. Sullivan's claims are subject to dismissal with prejudice against all Defendants and the consequences of dismissal with prejudice have been explained to Ms. Sullivan herein: that she is barred from pursuing these claims in any future lawsuit. Under these circumstances, the court feels that a *Spickler Order* and attorney's fees would be inappropriate.

The court notes however that this order does not preclude the Defendants from seeking attorney's fees or a *Spickler* Order in the event Ms. Sullivan attempts to relitigate the matters fully decided in this, or any other case concerning the disputed boundary.

## III. Conclusion

Ms. Sullivan's "third lawsuit" Complaint alleges that the 2017 Owen Haskell survey misrepresents the location of a disputed boundary. The accuracy of the 2017 survey was settled by final order of the Superior Court on summary judgment in the "second lawsuit." The "third lawsuit" attempts to relitigate whether the 2017 survey, as well as the evidence submitted in support of that survey on summary judgment, is accurate. Ms. Sullivan's allegation of fraud does not change the ultimate issue presented: whether or not the 2017 survey and supporting evidence is an accurate representation of the boundary between Ms. Sullivan and the Warren-Whites. Res Judicata prevents relitigating the accuracy of the 2017 Owen Haskell survey and the evidence submitted in support of that survey.

The entry is:

Defendant Kilbourn's Motion for Enlargement is GRANTED.

Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

Defendant Warren-White's Motion for *Spickler* Order is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: June 14, 2021

MaryGay Kennedy, Justice
Maine Superior Court

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-2020-103

MARTINA M. SULLIVAN,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
OWEN HASKELL, INC., SAMUEL　　　　)
KILBOURN, NATHANIEL　　　　　　　　)
WARREN-WHITE, ELIZABETH　　　　　　)
WARREN-WHTE and SEBAGO　　　　　　)
TECHNICS,　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　)

**ORDER ON DEFENDANTS
NATHANIEL AND ELIZABETH
WARREN-WHITE'S RENEWED
MOTION FOR *SPICKLER* ORDER
AND ATTORNEY'S FEES**

Before the Court is Defendants Nathaniel and Elizabeth Warren-White's ("the Warren-Whites") Renewed Motion for *Spickler* Order and Attorney's Fees. Plaintiff Martina Sullivan did not timely oppose the Motion. The Court previously declined to rule on the Warren-Whites' Motion pending Ms. Sullivan's appeal of the Court's June 14, 2021 Order dismissing her Complaint. On February 3, 2022, the Law Court affirmed the dismissal of Ms. Sullivan's Complaint. *Sullivan v. Kilbourn*, Mem-22-10 (Feb. 3, 2022). Accordingly, the Court is now prepared to rule on the Warren-Whites' Motion. For the following reasons, the Court grants the Warren-Whites' Motion.

## I.　Background

The history of this matter begins in 2015, when the Warren-Whites filed a complaint in a separate case to determine title to disputed property between Ms. Sullivan's and the Warren-Whites' respective homes.[1] Judgment was entered in favor of

---

[1] The Court may take judicial notice of its own records. *See Spickler v. Key Bank of S. Me.*, 618 A.2d 204, 207 (Me. 1992); *Guardianship of Jewel M.*, 2010 ME 80, ¶ 24, 2 A.3d 301.

REC'D CUMB CLERKS OFC
JUL 15 '22 AM9:05

the Warren-Whites in 2017. Ms. Sullivan appealed the 2017 judgment, and the Law Court upheld the judgment. *Warren-White v. Sullivan*, Mem-18-38 (May 3, 2018). Then, Ms. Sullivan filed two motions for relief from judgment, which were denied. Ms. Sullivan appealed again, and the Law Court affirmed the denial of her motion for relief from judgment. *Warren-White v. Sullivan*, Mem-20-27 (Mar. 5, 2020). Her subsequent motion for reconsideration was also denied.

In 2018, Ms. Sullivan filed a complaint against the Warren-Whites, alleging that the boundary line was mismarked in a survey completed following the 2017 judgment. Summary judgment was entered in favor of the Warren-Whites. Ms. Sullivan's first appeal was dismissed as interlocutory. After all claims were resolved, Ms. Sullivan appealed again, and the Law Court affirmed the entry of summary judgment. *Sullivan v. Warren-White*, Mem-21-62 (July 20, 2021). The Law Court stated:

> [G]iven the history of this case, which has now come before us for decision four times in recent years, and given Sullivan's evident and expressed unwillingness to accept the settled judicial resolution of the boundary line between the parties' properties, we grant the Warren-Whites' motion for a *Spickler* order requiring Sullivan to obtain prior approval by a Superior Court justice for subsequent filings in the trial court relating to these parties and the subject matter of previous litigation between them.

*Id.* It is unclear whether the Law Court intended its ruling to apply only to filings made in previously docketed cases, or whether it intended its *Spickler* ruling to also apply to future lawsuits, including the present case.

This action, initiated by Ms. Sullivan in 2020, is the third suit regarding the boundary between Ms. Sullivan's and the Warren-Whites' properties. Ms. Sullivan's Complaint, now dismissed, alleged that the Warren-Whites and remaining Defendants colluded to obtain Ms. Sullivan's property through fraud. On June 14, 2021, this Court dismissed the Complaint with prejudice on the basis that Ms. Sullivan's claims are barred

by the doctrine of res judicata. Ms. Sullivan filed a motion for reconsideration, and, subsequently, a notice of appeal. This Court denied the motion for reconsideration.

Ms. Sullivan's appeal of the Court's June 14, 2021 Order marked her fifth appeal in these actions. *Sullivan*, Mem-22-10 (Feb. 3, 2022). The Law Court, affirming this Court's dismissal of the Complaint, noted:

> We take allegations of fraud very seriously, but this is another meritless attempt to relitigate issues that have already been fully litigated and decided. "'The law abhors fraud . . . . It also abhors interminable litigation.'" *Bean v. Cummings*, 2008 ME 18, ¶ 12, 939 A.2d 676 (quoting *Cole v. Chellis*, 122 Me. 262, 264, 199 A. 623, 724 (1923)).

*Id.* Indeed, the Law Court characterized the boundary issue at the center of this action as "beyond dispute." *Id.*

Because of Ms. Sullivan's repetitive filings and numerous attempts to relitigate long-settled issues, the Warren-Whites filed the pending motion. They request an order requiring Ms. Sullivan to obtain the Court's approval before acceptance for filing of future complaints or other filings in this or any other action relating to the boundary dispute between Ms. Sullivan and the Warren-Whites.

## II. *Spickler* Standard

"It is well-settled that a court may enjoin a party from filing frivolous and vexatious lawsuits." *Spickler*, 618 A.2d at 207. Pursuant to *Spickler v. Key Bank of Southern Maine*, a court may grant an injunction requiring a party to obtain prior approval of the court before acceptance of a filing. *Id.* To obtain a *Spickler* injunction, the moving party "must make a detailed showing of a pattern of abusive and frivolous litigation." *Id.* The injunction should "sweep[] no broader than necessary to protect the [moving party] from frivolous litigation." *Id.*

## III. Discussion

### A. Jurisdiction

The Warren-Whites filed their Renewed Motion for *Spickler* Order after entry of final judgment and after Ms. Sullivan filed a notice of appeal. Although the parties did not raise the issue, the Court acknowledges that the entry of final judgment generates a question as to the Court's jurisdiction at this stage to grant a *Spickler* order.

Although entry of final judgment "closes" a case and generally divests the Court of its jurisdiction to rule on the subject matter of the case, neither the entry of final judgment nor disposition of an appeal immediately divests the Court of its authority to deal with other collateral matters.[2] For example, the Court retains jurisdiction over the taxation of costs pursuant to M.R Civ. P. 54(e) (after appeal) and award of attorney's fees (during the pendency of or after appeal). *See Cheoros v. Cheoros*, 1997 ME 37, ¶ 3, 690 A.2d 974 ("The rule provides that the motion for attorney fees may be filed at 'any time' after entry of the judgment, and the rule does not contain as a necessary condition that the Law Court remand the case or give the Superior Court explicit directions in order for the Superior Court to retain jurisdiction."); *Flaherty v. Muther*, 2011 ME 34, ¶ 10, 17 A.3d 663 ("To be clear, pursuant to M.R. Civ. P. 54(b)(3), the trial court may act on a post-judgment motion for attorney fees pursuant to Rule 37(c) after an appeal has been filed."). The Court may also hold contempt proceedings post-judgment. *See* M.R. Civ. P. 66.

It follows that the Court retains jurisdiction to sanction parties for abuse of the litigation process by means other than an award of attorney's fees or contempt proceedings. *See Town of Arundel v. Dubois Livestock, Inc.*, 2019 ME 104, ¶ 11, 211 A.3d 202 (suggesting that, when a vexatious litigant continues to file post-judgment motions, a

---

[2] The United States Supreme Court has concluded that federal district courts have jurisdiction to consider post-judgment motions for attorney's fees and costs because such motions are "independent" from the original proceedings and do not seek to impermissibly reopen the underlying judgment. *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 170, (1939); *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 451, n.13, (1982) (discussing *Sprague*).

court may properly enter a vexatious litigant order after entry of final judgment); *Chiapetta v. LeBlond,* 544 A.2d 759, 760 (Me. 1988) ("[T]he trial court does possess inherent authority to sanction parties for abuse of the litigation process."); *see also* Fed. R. Civ. P. 11(c) advisory committee's note to 1983 amendment ("The time when sanctions are to be imposed rests in the discretion of the trial judge. However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation.")

Particularly where, as here, the filing of repetitive and meritless motions and appeals continues after entry of final judgment, a post-judgment *Spickler* order is appropriate. *See Town of Arundel,* 2019 ME 104, ¶ 11, 211 A.3d 202; *McLaughlin v. Bradlee,* 803 F.2d 1197, 1201, 1205 (D.C. Cir. 1986) (upholding district court's post-judgment imposition of sanctions based on sanctioned party's filing of four frivolous post-judgment motions). Delaying entry of a *Spickler* order until the parties are once again before the Court in another case would needlessly result in further expenditure of the Court's and the Warren-Whites' resources.

## B. *Spickler* Order

Over the span of several years, Ms. Sullivan has repeatedly and unsuccessfully attempted to relitigate the long-settled boundary dispute between herself and the Warren-Whites. Within three separate actions (two of which were filed by Ms. Sullivan), she has filed numerous unsuccessful and meritless complaints and counterclaims, appeals, motions for relief from judgment, and motions for reconsideration (which often did not comply with M.R. Civ. P. 7(b)(5)). At several junctures, this Court and the Law Court have informed Ms. Sullivan that her claims have no legal merit, and that, if she persists in filing repetitive and groundless motions, the Court may impose sanctions.

The Warren-Whites have made a detailed showing of a pattern of abusive and frivolous filings by Ms. Sullivan. The history of the litigation between Ms. Sullivan and the Warren-Whites suggests that, if the Court does not enter a *Spickler* order, Ms. Sullivan will continue to attempt to relitigate the boundary dispute between the parties. Accordingly, the Court finds that injunctive relief is appropriate. Ms. Sullivan is enjoined from filing further complaints, motions, pleadings, or other filings regarding the boundary between the Warren-Whites' and Ms. Sullivan's respective properties without prior approval of the Court.

### C. Attorney's Fees

The Warren-Whites also seek to recover their attorney's fees. Considering Ms. Sullivan's conduct in this case (as well as others), which necessitated the Warren-Whites' filing of this motion, the Court will award the Warren-Whites their reasonable attorney's fees incurred in filing the Renewed Motion for *Spickler* Order upon submission of a fee affidavit.

### IV. Conclusion

The entry is:

1. Defendants Nathaniel and Elizabeth Warren-Whites' Renewed Motion for *Spickler* Order is GRANTED. Plaintiff Martina Sullivan is ENJOINED from filing further complaints, motions, pleadings, or other filings regarding the boundary between the Warren-Whites' and Ms. Sullivan's respective properties without prior approval of the Court. Before acceptance for filing, the Court will examine any such filing submitted by Ms. Sullivan to determine whether it is frivolous or vexatious; and

2. Ms. Sullivan shall pay the Warren-Whites their reasonable attorney's fees incurred in preparing and filing the Renewed Motion for *Spickler* Order in an amount to be determined by the Court upon receipt of an attorney's fee affidavit. The Warren-Whites may submit a fee affidavit within ten days of the date of this order. Ms. Sullivan will have ten days thereafter to respond only to the reasonableness of the fees in the affidavit. The *Spickler* Order will not apply for the purposes of Ms. Sullivan's response to the fee affidavit, only.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: ___7/15/2022___

_____
MaryGay Kennedy, Justice
Maine Superior Court